UNITED STATES *v.* HOME TITLE INSURANCE CO.

No. 356.   Argued January 19, 1932.—Decided March 14, 1932.

*Mr. Claude R. Branch,* with whom *Solicitor General Thacher, Assistant Attorney General Youngquist,* and *Messrs. J. Louis Monarch, J. P. Jackson, Francis H. Horan, Clarence M. Charest, E. H. Horton,* and *Walter W. Mahon* were on the brief, for the United States.

*Mr. Hugh Satterlee,* with whom *Mr. I. Herman Sher* was on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Respondent filed returns in respect of capital stock taxes for the years ending June 30 in 1923, 1924 and 1925 under § 1000 of the Revenue Act of 1921 and § 700 of the Revenue Act of 1924.[1]   The first two reported taxes

---

[1] Section 1000 of the Act of 1921 is the same as § 700 of the Act of 1924.  Section 246 is the same in both Acts.  Pertinent provisions of

due. In the other, respondent claimed to be an insurance company taxable under § 246, and consequently exempt from the capital stock tax. It made returns and paid income taxes for the calendar years 1921 to 1925 inclusive. In February, 1926, respondent paid under protest the capital stock taxes. It made application for refund and, that being denied, brought this action in the district court for eastern New York to recover the amounts so exacted. The parties submitted the case on an agreed statement of facts. The court gave judgment for the United States. 41 F. (2d) 793. The Circuit Court of Appeals reversed. 50 F. (2d) 107.

The question is whether during the periods for which the capital stock taxes were paid, respondent was an insurance company taxable only under § 246.

Respondent was organized in 1906 under Article V of the New York Insurance Law. It was formed to examine and guarantee title to real estate, to lend money on real estate mortgages and to guarantee such mortgages as to payment of principal and interest and to do the work generally of a title insurance company. It is under the supervision of the state superintendent of insurance, subject to the laws applicable to title and credit guaranty corporations, and maintains the required guaranty fund.

Its business has always consisted of issuing two kinds of contracts: (1) those in which it merely guarantees title and (2) those in which it guarantees (a) title to real estate covered by a mortgage and (b) payment of principal and interest of the debt. Preliminary to the issue of title insurance policies first mentioned, respondent prepared abstracts and made examination of the title. Its charges were based upon a scale dependent upon the amounts of the policies, and included fees for examina-

both are printed in the margin of our opinion in *Bowers* v. *Lawyers Mortgage Co., ante,* p. 182, and need not be repeated here.

tions, searches and other service incident to the transaction. Policies guaranteeing both title and payment of such mortgage debts were issued substantially as follows: When respondent received an application for a loan, it made an appraisal of the property and an examination of the title. Upon its approval of the application, it received from the borrower his bond and mortgage and paid him the amount of the bond, less charges for services incidental to title insurance and also for inspection and appraisal of the property. The fee covering title insurance was made a condition of every loan.. Respondent did not charge any lending fee.

It sold the loans at face value and delivered to the purchaser of each a mortgage guaranty or, in case of the sale of part of a loan, a participation certificate. By every such guaranty or certificate, the purchaser appointed respondent his agent to collect principal and interest of the loan, and the latter guaranteed (1) the mortgage to be a valid first lien upon a good and marketable title in fee, (2) payment of principal when collected and in any event within 12 months after maturity and (3) payment of interest at a rate usually one-half of one per cent. less than that specified in the bond. The difference was called premium. Generally, about two months elapsed between the making of loans and their sale. The interest for that period was retained by respondent and constituted a part of its gross income.

It never held nor sold mortgages that were not acquired and guaranteed as above stated and never guaranteed other than those controlled by it. Its expenses were not assigned to its different classes of business, and its assets were used indiscriminately in connection with all its activities. Corporations organized under New York banking laws and subject to the supervision of the banking department are authorized to make mortgage loans and sell them with guaranties such as those given by respondent,

and from 1921 to 1925 at least two companies thus organized and supervised were engaged in that business.

Respondent's policies merely guaranteeing title amounted to more than six times its mortgage guaranties. A tabular statement in the margin makes the comparison.[2] Its title insurance, not connected with mortgage guaranties, outstanding in each of the five years amounted to more than $100,000,000. Another table[3] states its gross income from sources other than interest, rents, dividends and profits on sale of bonds, and classifies such income so as to show: (1) the difference between interest received and that guaranteed by respondent; (2) fees and charges attributable to mortgage guaranties; (3) fees and charges attributable to title insurance where respondent did not

---

[2] Column 1 shows the amount of policies merely guaranteeing titles and column 2 shows the amount of mortgage guaranties.

|        | 1              | 2             |
|--------|----------------|---------------|
| 1921   | $29, 090, 650  | $4, 359, 346  |
| 1922   | 46, 050, 180   | 7, 319, 246   |
| 1923   | 67, 138, 820   | 7, 989, 950   |
| 1924   | 69, 442, 530   | 11, 341, 239  |
| 1925   | 87, 965, 580   | 13, 214, 092  |

|                                                          | 1921        | 1922          | 1923          | 1924          | 1925          |
|----------------------------------------------------------|-------------|---------------|---------------|---------------|---------------|
| (1) Mortgage guaranty premiums                           | $90, 449. 14 | $105, 750. 08 | $134, 349. 66 | $175, 641. 39 | $227, 869. 93 |
| (2) Inspection and appraisal fees                        | 88, 679. 75 | 139, 830. 45  | 115, 658. 86  | 133, 549. 10  | 149, 830. 35  |
| (3) Title insurance fees where no mortgage guaranty      | 270, 030. 79 | 406, 019. 93  | 565, 155. 86  | 576, 771. 36  | 714, 949. 06  |
| (4) Title insurance fees where mortgage guaranty also    | 131, 243. 75 | 206, 945. 45  | 171, 172. 14  | 197, 649. 23  | 221, 745. 05  |
| (5) Mortgage renewals                                    | 28, 940. 83 | 30, 123. 35   | 30, 557. 75   | 24, 745. 35   | 44, 779. 75   |
| (6) Conveyancing fees                                    | 13, 544. 25 | 26, 008. 93   | 27, 779. 00   | 33, 668. 40   | 35, 340. 67   |
| (7) Charges for searches                                 | 3, 693. 77  | 6, 497. 46    | 7, 945. 91    | 11, 398. 30   | 14, 749. 09   |
| (8) Recording fees                                       | 3, 316. 28  | 4, 094. 43    | 6, 723. 69    | 6, 133. 14    | 9, 252. 70    |
| (9) Charges for surveys                                  | 392. 45     | 326. 80       | 569. 20       | 1, 339. 65    | 1, 993. 25    |
| Total                                                    | 630, 291. 01 | 925, 596. 83  | 1, 059, 912. 07 | 1, 160, 895. 92 | 1, 420, 509. 85 |
| Other income                                             | 75, 167. 80 | 103, 223. 94  | 156, 721. 05  | 209, 926. 81  | 240, 544. 43  |
| Total income                                             | 705, 458. 81 | 1, 028, 820. 77 | 1, 216, 633. 12 | 1, 370, 822. 73 | 1, 661, 054. 28 |

make nor guarantee mortgages or loans; (4) compensation for guaranteeing mortgages to be first liens upon titles in fee; (5) income from mortgage renewals; etc.

The guaranty of payment of the principal and interest of mortgage loans constitutes insurance. *Bowers* v. *Law-yers Mortgage Co., ante,* p. 182. The amounts received as compensation for insuring title, for guaranteeing that mortgages are first liens and for guaranteeing payment constitute the larger part of respondent's income. And, when there are added the fees and charges for examination of title, appraisals, and other services incident to its insurance business, the total properly assignable to that business amounts to more than 75 per cent. of all respondent's income. Undeniably insurance is its principal business. Indeed, it does not appear that any substantial part of its transactions was not connected with or the outgrowth of insurance. The admitted facts clearly show that in the tax years above mentioned respondent was an "insurance company" within the meaning of that phrase as commonly understood and as used in the Revenue Acts of 1921 and 1924. It was taxable under § 246 and therefore exempt from capital stock taxes.

*Judgment affirmed.*