## LINCOLN MORTGAGE & TITLE GUARANTY CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 5685.

Circuit Court of Appeals, Third Circuit.

Sept. 24, 1935.

Merritt Lane and Bilder, Bilder & Kaufman, all of Newark; N. J. (Merritt Lane and Samuel Kaufman, both of Newark, N. J., and Louis Spiegler, of Washington, D. C., of counsel; Morris M. Schnitzer, of Newark, N. J., on the brief), for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This appeal involves the' liability of the taxpayer, the Lincoln Mortgage & Title Guaranty Company, for income taxes for the years 1926 and 1927.

*Writ of certiorari denied 56 S. Ct. 381, 80 L. Ed. —.

The taxpayer was incorporated under the insurance laws of the state of New Jersey and was operated under the direction and supervision of the department of banking and insurance of that state.

The taxpayer was principally engaged in the business of lending money on bonds secured by mortgages on real estate. On approval of an application for a loan, the taxpayer would take a mortgage and a 6 per cent. bond from the borrower and charge him a lending fee of from 3 to 5 per cent. The taxpayer would then sell the bond and mortgage to an investor and would issue to the purchaser an assignable contract which it called a "policy." This policy guaranteed the payment of the principal amount of the bond and mortgage with interest thereon at 5½ per cent. per annum. The taxpayer also sold part interests in bonds and mortgages and issued to the purchaser an assignable participation certificate which had substantially the same terms of guaranty as the policy.

The terms of the policy or participation certificate constituted the taxpayer the agent of the purchaser or assured, to sue for and recover the proceeds of any policy of fire or title insurance covering the mortgaged premises, and to exercise options or privileges given in the bond or mortgage, and permitted the taxpayer to retain as its premium for the guaranty all interest in excess of the rate guaranteed. The purchaser agreed not to collect any interest or principal except through the taxpayer until the breach or termination of the guaranty.

The taxpayer collected 6 per cent. interest annually, from the mortgagor, retaining half of 1 per cent. as its premium on the mortgage guaranty and paid the remaining 5½ per cent. to the holder of the mortgage or the holders of the certificates participating therein.

The taxpayer kept the interest accruing between the date of the loan and the sale of the bond and mortgage.

In 1927, the taxpayer received the following income:

"1. Premiums for:
| | | |
|---|---|---|
| "(a) Title Insurance | $ | 587.35 |
| "(b) Mortgage Guaranties | | 300,694.01 |

"2. Fees for:
| | |
|---|---|
| "(a) Miscellaneous | 223.47 |
| "(b) Drawing Papers | 65.00 |
| "(c) Inspections | 1,772.50 |

"3. Interest Earned on: (investments of capital and surplus)
| | |
|---|---|
| "(a) Mortgage Loans | 299,303.74 |
| "(b) Bonds and Stocks | 2,351.62 |
| "(c) Bank Deposits | 10,356.94 |
| "(d) Certificates of Deposit | 5,724.49." |

The item 3 (a) consists of the fees charged the borrower by the taxpayer when the loans were made in the first instance.

The facts stated above refer to the year 1927. The taxpayer failed to submit evidence as to its business in 1926.

At the end of 1926, the taxpayer had absorbed substantially all of its capital and surplus in loans. Sales of its bonds and mortgages were slow. To secure additional funds for new loans, the taxpayer in 1927 issued a series of ten-year bonds in the amount of approximately $8,000,-000, which it sold to Harris Forbes & Co. at a discount of $176,982.50.

The Board of Tax Appeals determined on the authority of Bowers v. Lawyers' Mortgage Co., 285 U. S. 182, 52 S. Ct. 350, 76 L. Ed. 690, that the taxpayer was not taxable in 1927 as an insurance company under section 246 of the Revenue Act of 1926 (26 USCA § 204 note).

In the Bowers Case, supra, and United States v. Home Title Insurance Co., 285 U. S. 191, 52 S. Ct. 319, 321, 76 L. Ed. 695, in which it applied the same principles of law and reached opposite results on the facts, the court held that the question of whether or not a corporation chartered under and subject to state insurance laws should be taxable under section 246 is determined by the character of the business it has actually done in the taxable year. However, the court said: "Undoubtedly the guaranties contained in the policies and participation certificates were in legal effect contracts of insurance." 285 U. S. 182, 189, 52 S. Ct. 350, 353, 76 L. Ed. 690.

In the case now before us, nearly half of the taxpayer's income for 1927 was derived from "premiums" paid for the guaranty of the principal and interest of mortgage loans which it had sold. A negligible part only of its income came from premiums for the insurance of titles, and the remainder, amounting to more than half of its income, was derived from what is called interest earned on the taxpayer's investments.

In the Bowers Case, the Lawyers' Mortgage Company earned the following income for the taxable years involved therein:

| "Year | Lending Fees | Extension Fees | Interest | Premiums |
|---|---|---|---|---|
| 1922..... | $655,283.70 | $214,303.56 | $372,795.12 | $619,986.38 |
| 1923..... | 990,855.37 | 73,745.71 | 426,842.31 | 750,803.21" |

In the other case, the Home Title Insurance Company earned the following:

| | | | 1923 | 1924 | 1925 |
|---|---|---|---|---|---|
| "(1) Mortgage guaranty premiums | * * * | | $ 134,349.66 | $ 175,641.39 | $ 227,869.93 |
| "(2) Inspection and appraisal fees | * * * | | 115,658.86 | 133,549.10 | 149,830.35 |
| "(3) Title insurance fees where no mortgage guaranty | * * * | | 565,155.86 | 576,771.36 | 714,949.06 |
| "(4) Title insurance fees where mortgage guaranty also | * * * | | 171,172.14 | 197,649.23 | 221,745.05 |
| "(5) Mortgage renewals | * * * | | 30,557.75 . | 24,745.35 | 44,779.75 |
| "(6) Conveyancing fees | * * * | | 27,779.00 | 33,668.40 | 35,340.67 |
| "(7) Charges for searches | * * * | | 7,945.91 | 11,398.30 | 14,749.09 |
| "(8) Recording fees | * * * | | 6,723.69 | 6,133.14 | 9,252.70 |
| "(9) Charges for surveys | * * * | | 569.20 | 1,339.65 | 1,993.25 |
| "Total | * * * | | $1,059,912.07 | $1,160,895.92 | $1,420,509.85 |
| "Other Income | * * * | | 156,721.05 | 209,926.81 | 240,544.43 |
| "Total Income | * * * | | $1,216,633.12 | $1,370,822.73 | $1,661,054.28." |

In both cases, a substantial amount of income was derived from "premiums" charged (as was true in the present case) for the guaranty and payment of principal and interest of mortgage loans. But the Home Company's title insurance fees alone amounted to more than half of its total income. Moreover, the Home Company charged no lending fees and the Lawyers' Company issued no title insurance.

The Supreme Court denied the contention of the Lawyers' Company that it was taxable as an insurance company under section 246 in the following language:

"The lending fees * * * and accrued interest appertain to the business of lending money rather than to insurance and may not reasonably be attributed to the subordinate element of guaranty in respondent's mortgage loan business. * * *

"'Premiums' are characteristic of the business of insurance, and the creation of 'investment income' is generally, if not necessarily, essential to it. Section 246 does not cover any other class of income. It is not shown that respondent had any investment income within that section. Evidently its guaranties produced less than one-third of its income. * * *

"The element of insurance may not properly be regarded as more than an incident thereof; it certainly is not sufficient to make respondent an 'insurance company' within the meaning of that phrase as it is commonly used and understood."

In holding that the Home Company was an insurance company, the court said: "The amounts received as compensation for insuring title, for guaranteeing that mortgages are first liens, and for guaranteeing payment, constitute the larger part of respondent's income. * * *

"Undeniably insurance is its principal business. Indeed, it does not appear that any substantial part of its transactions was not connected with or the outgrowth of insurance."

When we consider the facts in the case before us in the light of those decisions, we are constrained to hold that the taxpayer was not an insurance company within the meaning of section 246.

The taxpayer in 1927 conducted an investment business and its insurance business was incidental and auxiliary thereto. In its petition for review, the taxpayer said: "The principal business of the Lincoln Mortgage & Title Company was making loans on fee simple or other interests in real property for a period of years secured by a bond and mortgage. The income from this branch of its business was derived from premiums ranging from 3 per cent. to 5 per cent. paid by the borrower when the loan was granted, plus interest payments at the rate of 6 per cent. per annum provided for in the bond and mortgage."

The item referred to in the paragraph quoted amounted to $299,303.74 and is en-

titled "investments of capital and surplus on mortgage loans." But its nature was not that of "investment income" which "is generally, if not necessarily essential to" the insurance business. It was made up of lending fees which are characteristic of the business of lending money. Bowers v. Lawyers' Mortgage Co., supra, 285 U. S. 182, at page 189, 52 S. Ct. 350, 76 L. Ed. 690. Moreover, the foundation of the taxpayer's business is dependent upon investment, and the guaranties of the principal and interests of the bonds and mortgages which it sold were undoubtedly to make the securities attractive to purchasers.

Again, as the Supreme Court said, in the Lawyers' Mortgage Co. Case, supra, the premiums of one-half of 1 per cent. interest retained by the taxpayer out of the guaranteed interest of 6 per cent. cover the agency and other services not performed under contracts of insurance. "There is no showing that these amounts do not include profits arising from such sales or that they are justly chargeable or were intended to apply only to the risks covered."

The taxpayer also contends that the board was in error in not permitting it to deduct as a business expense the amount of $176,982.50 at which it discounted its $8,000,000 issue of ten-year bonds.

The board required the taxpayer to amortize the discount given to the purchaser of the bonds over the whole period of their life. That was in conformity with the requirement of Treasury Regulations 69, Article 545, and is proper. Helvering v. Union Pacific R. Co., 293 U. S. 282, 55 S. Ct. 165, 79 L. Ed. 363.

The board in redetermining the taxes in this case does not appear to have erred and its order is affirmed.