## EMPIRE TITLE & GUARANTEE CO. v. UNITED STATES.
### No. 7390.

District Court, E. D. New York.
Dec. 27, 1937.

McPike & Zimmer, of New York City (Edward G. Zimmer, of New York City, of counsel), for plaintiff.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (Arthur L. Jacobs, Sp. Asst. Atty. Gen., and Edward G. Goldstein, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

GALSTON, District Judge.

The plaintiff is a corporation which was organized in 1925 under and pursuant to the Insurance Law of the state of New York, Consol.Laws, c. 28. It seeks to recover in the first cause of action set forth the sum of $1,770.37, with interest, which amount was paid to the Collector of Internal Revenue of the United States in Brooklyn as a capital stock tax assessed against the plaintiff for the year ending June 30, 1933; in the second cause of action the plaintiff seeks to recover $1,798.51, also paid to the Collector of Internal Revenue as a capital stock tax for the year ending June 30, 1934.

The question presented in this case is the same as that which was considered in Bowers, Executor, v. Lawyers' Mortgage Co., 285 U.S. 182, 52 S.Ct. 350, 353, 76 L. Ed. 690, and in United States v. Home Title Co., 285 U.S. 191, 52 S.Ct. 319, 321, 76 L.Ed. 695; i. e., was the plaintiff an insurance company subject to the capital stock tax imposed by section 204 of the Revenue Acts of 1932 and 1934? Title 26 U.S.Code, § 204, 26 U.S.C.A. § 204 and note, provides in part:

"Insurance companies other than life or mutual

"(a) Imposition of tax. In lieu of the tax imposed by section 13 of this title, there shall be levied, collected, and paid for each taxable year upon the net income of every insurance company (other than a life or mutual insurance company) a tax as follows:" etc.

The provision in the 1932 act is the same.

In the National Industrial Recovery Act, c. 90, § 215(a), 48 Stat. 195, 207, a tax is imposed upon every domestic corporation of $1 for each thousand dollars of the adjusted declared value of its capital stock, but any insurance company subject to the tax imposed by section 204 of the Revenue Act of 1932 is exempt.

Similarly under the capital stock tax, Revenue Act 1934, § 701, U. S. Code title 26, § 1358, 26 U.S.C.A. § 1358, the tax imposed by the section does not apply to any insurance company subject to the tax imposed by section 204.

The two cases cited above, Bowers v. Lawyers' Mortgage Company and United States v. Home Title Co., set forth the test or tests to be applied for the purpose of determining whether the taxpayer is exempt as an insurance company such as is defined in section 204 of the Revenue Acts of 1932 or 1934. In the former case it was said: "While name, charter powers, and subjection to state insurance laws have significance as to the business which a corporation is authorized and intends to carry on, the character of the business actually done in the tax years determines whether it was taxable as an insurance company. U. S. v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180; Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520."

In applying that test the Supreme Court found that the business of the Lawyers Mortgage Company then under consideration did not entitle it to exemption as an insurance company from the imposition of a capital stock tax. In the Home Title Company Case, on the contrary, it was found that insurance was the principal business of the company, and also that it did not appear that "any substantial part of its transactions was not connected with or the outgrowth of insurance."

The plaintiff is in the business of insuring titles to real estate, makes mortgage loans for the purpose of selling such mortgages with a guarantee of the payment of principal and interest of mortgages, and insures to the assignee of the mortgage the soundness of the title. The plaintiff also made building loans, and, in connection therewith, caused inspection and appraisal of the real property to be made.

In the sale of the mortgages they were assigned at their face value and one-half of 1 per cent. of the interest was retained as a premium for the guarantees.

In the statement of income prepared by the plaintiff for the years 1932, 1933, and 1934, the following figures appear:

| Premiums | 1932 | 1933 | 1934 |
|---|---|---|---|
| For Mortgage Guarantees | $35,733.40 | $32,394.85 | $30,800.80 |
| For Title Insurance | 1,505.12 | 861.03 | 715.05 |
| Total | $37,238.52 | $33,255.88 | $31,515.85 |
| Total Income, All Sources | $175,768.47 | $128,001.87 | $127,170.81 |

Premiums then for the three taxable years recorded show a range of 21 to 26 per cent. of the total gross income from all sources. If to the premiums there be added the income from business incidental to insurance income, as for example that emanating from the examination of titles where title policies are applied for, fees for conveyancing, recording fees, certificates, guaranteed mortgage renewals, the figures show:

| | 1932 | 1933 | 1934 |
|---|---|---|---|
| Income | $12,717.76 | $6,642.36 | $11,406.37 |

or in percentage, respectively, 7.37, 5.23, 9.04, of gross income from all sources.

An item in dispute of considerable moment in determining classification of income is that designated as "interest on mortgages." In 1932, this amounted to $98,049.96; in 1933, to $49,761.54; and in 1934, to $12,693.48. The defendant seeks to have this item treated as "income from the business of loaning money."

The proof shows that the plaintiff was not engaged in the business of trading in mortgages. Its purpose in acquiring and disposing of mortgages was not to invest its funds in mortgages, nor was it to sell the mortgages at a profit. On the contrary, its object was to assign these mortgages at their face value accompanied by its guarantee. Plaintiff's profit was obtained from the fees collected from the mortgagor upon the making of the bond or mortgage and from the premium for its guarantee. Richards, the president of the plaintiff company, so testified.

Now it follows from the manner in which the plaintiff did its business that at times it had on hand undisposed of mortgages subject to its guarantee and ready to be assigned with such guarantee to investors. To carry on its operations it was necessary for the company to acquire a mortgage before disposing of it with its guarantee. Such acquisitions were, therefore, a necessary and incidental phase of its business. It is reasonable in consequence to contend that the interest accruing to the company during the period between the acquisition of a mortgage and its assignment with a guarantee should properly be classified as incidental insurance income.

Thus treated, insurance income and incidental insurance income for the year 1932 would be roughly 90 per cent. of the total, and in 1933, 80 per cent. of the total income from all sources. Such operations make a showing responsive to the test in United States v. Home Title Insurance Company, and lead to the conclusion that insurance was the principal business of the plaintiff, at least for the years 1932 and 1933.

A critical examination for the tax year 1934 discloses a different situation, for the business of the company that year included an item of $54,428.51 for searches unrelated to insurance, and inasmuch as the total income from all sources amounted to $126,138.28, it is apparent that a substantial part of the business of the company for that year was not insurance. A large part of the fees for such searches resulted from searches for the Home Owners Loan Corporation. In connection therewith there was no insurance or guarantee given so far as the record before me discloses.

I conclude, then, that judgment should be rendered for the plaintiff in the first cause of action, and for the defendant in the second cause of action.