ARK. MOTOR CLUB *v.* ARK. EMPLOYMENT SEC. DIVISION.

5-3151                                              373 S. W. 2d 404

Opinion delivered December 23, 1963.

*Riddick Riffel,* for appellant.

*Luke Arnett,* for appellee.

CARLETON HARRIS, Chief Justice. The question presented on this appeal is whether appellant, Arkansas Motor Club, Inc., is liable for Unemployment Compensation Tax. Appellant is engaged in selling motor club memberships to the general public within this state. These sales are made through salesmen.. On June 13, 1960, after a hearing, the Arkansas Commissioner of Labor held that the salesmen of appellant were employed under an oral contract for a one-year term, which could be terminated by either party; that the only source of revenue for appellant was the sale of membership certificates; that these salesmen are "outside salesmen of the company, performing an integral and imperative part of the corporative business and are not independent contractors and are employees of the Arkansas Motor Club within the meaning and pursuant to the statutory provisions of the Arkansas Employment Security Act." The Commissioner further found that the salesmen were not

insurance salesmen, but sold only automobile club memberships and ''the fact that an insurance policy is issued in connection with the automobile association membership does not make them insurance agents within the meaning of Section 2 (i) (6) (P) of the Arkansas Employment Security Act.''

The Commissioner held that appellant was the employer of the salesmen involved, and was liable for Unemployment Compensation Tax on the commission paid to these employees.

An appeal was taken to the Board of Review, and that body affirmed the Determination of Coverage as entered by the Labor Commissioner. On appeal to the Circuit Court of Pulaski County (Third Division), the ruling of the Board of Review was affirmed. Thereafter, appellant has perfected its appeal to this court.

For reversal, appellant argues first, that the salesmen of Arkansas Motor Club, Inc., are free and clear of the control and direction of appellant, and are therefore independent contractors and exempt from the operation of the act.[1] It is also contended that memberships in the club are contracts of insurance, and the salesmen are insurance agents whose services are performed for remuneration solely by way of commissions; the act, therefore, is not applicable.[2]

Since we have concluded that the salesmen for appellant are insurance agents or solicitors, a discussion of the first alleged ground for reversal is unnecessary, and we by-pass the question of whether these salesmen are independent contractors.

The record reflects that the motor club has an office in Little Rock, with an office manager, who is under the control and direction of the club's officers who live in Atlanta, Georgia. The club enters into oral agreements

[1] Ark. Stat. Anno. § 81-1103 (Repl. 1960) (i) (2) (A) and (5) (C) exempt independent contractors, (C) providing that independent contractors shall be deemed employers and not employees.

[2] Sub-section (i) (6) (P) exempts insurance agents or insurance solicitors "if all such services performed by such individual for such person, or employing unit, is performed for remuneration solely by way of commission."

with individuals whereby the latter agrees to sell club memberships. Some of these agents work on a full time basis, and others sell the memberships in addition to regular employment held elsewhere. Each agent is assigned a particular territory to work, though he is also privileged to sell memberships in territory not assigned to him. In that event, the seller of the membership receives the initial commission, but the commission on the renewal premium is turned over to the agent to whom the territory had been assigned. Agents receive no salary, no travel expenses,[3] and are paid entirely on a commission basis, *i.e.,* they receive a certain percentage of the premium for each membership sold. The benefits provided by the purchase of a membership to the holder will be subsequently discussed.

Chapter 16, Ark. Stat. Ann. (Repl. 1957) relates to "Automobile Clubs or Associations."[4] Section 75-1601 defines an "Automobile Club or Association" as:

"(a) any person, firm, association, copartnership, corporation, company or other organization, which from and after the effective date of this act undertakes for consideration paid by or on behalf of its members to defray all or a part of the expenses of such member or members with reference to motor club service as defined in Section 2 [§ 75-1602] of this act, or which issued a certificate which provides for the payment of such benefits to such member or members in services, cash, by furnishing bail, or otherwise, and (b) every person, firm, association, copartnership, corporation or company which prior to the effective date of this act has undertaken for a consideration to pay money or render services to its members, or which has issued any form of contract or certificate or membership card which, under the terms thereof, provides for the payment in money, service, or otherwise for motor club service as defined in Section 2 [§ 75-1602] of this act."

---

[3] The sole exception relates to special meetings, usually held twice a year, which are called for the purpose of explaining new matters, changes in contracts, etc. The agents are not required to attend, but in case of attendance, are reimbursed for travel expense, including hotel and meals while attending the meetings.

[4] Act 377 of 1955.

Section 75-1602 defines the various services which may be included in membership. Section 75-1603 gives the Insurance Commissioner complete authority to grant certificates of authorization to automobile clubs; to revoke certificates, and to prescribe rules and regulations reasonably necessary for the conduct of the business of the clubs. Section 75-1604 places all automobile clubs and associations operating in this state under the authority, supervision, and control of the Insurance Commissioner. Section 75-1605 requires, *inter alia,* the posting of a bond with the Commissioner, the payment of an annual license fee by the club or association, appointment of an agent for service of process, or, in lieu thereof, the Insurance Commissioner, and the club is required to file a copy of the proposed form of membership application, membership certificate, bylaws, contracts for service and advertising material. Section 75-1606 reads as follows:

"Before any agent or representative shall or may represent any automobile club or association in this state, he or she shall first apply to the Insurance Commissioner for a license and the Insurance Commissioner shall have full power and authority to issue such license upon proof satisfactory to him that such person is capable of soliciting automobile club or association memberships, and is of good moral character and recommended by the club or association in behalf of which such membership solicitations are to be made. Provided no such license shall be issued by the Insurance Commissioner until the applicant has paid to the Insurance Commissioner two dollars ($2.00) as annual license fee. The Insurance Commissioner may reject the application of any person who does not meet the requirements herein set out."

Section 75-1608 sets out that,

"* * * such clubs and associations shall not be subject to any other laws respecting insurance companies of any class, kind or character, except as to the conduct of hearings by the Insurance Commissioner and appeals therefrom."

Thus, we see that these motor clubs are under the supervision and regulation of the Commissioner of Insur-

ance. Of course, this fact, within itself, is not determinative of the status of the salesmen, but is a pertinent circumstance to be considered.

The purchaser of a membership receives a card which sets forth, *inter alia,* the following benefits: The club agrees to provide an appearance bond up to $200.00 in certain types of motor vehicle violations; a bail bond up to $5,000.00 in the event of an automobile accident (excepting particular charges); attorneys' fees up to $25.00 when a member is charged with violation of any motor vehicle law; attorneys' fees up to $150.00 if a member is charged with manslaughter, and an additional attorneys fee up to $250.00 if the judgment is appealed to a court of last resort.[5] In addition, the member receives a certificate of accident insurance, issued by the Inter-Ocean Insurance Company, which provides benefits of $10,000.00 for loss of life in a railroad accident, $2,500.00 for loss of life in a bus, street car, steamship, or subway accident, and $1,000.00 for the loss of life in "Automobile, Pedestrian, Taxi, School Bus, Truck, Airplane Accidents." Benefits are also provided for loss of sight, both hands, both feet, one hand and one foot, one hand and sight of one eye, one foot and sight of one eye, either hand, either foot, or sight of either eye. Section 3 of the insurance contract provides certain hospital benefits, including operating room, x-ray pictures, oxygen tent, and other benefits of a similar nature. Section 4 provides certain benefits for non-disabling injuries. Actually, it appears that the payments set out in the certificate are among the main benefits obtained through the purchase of memberships.

While there is no definition of the term "insurance" in several states, our Arkansas Insurance Code[6] provides a concise definition of that term. Ark. Stat. Ann. § 66-2002 (Supp. 1961) defines the term as follows:

" 'Insurance' is a contract whereby one undertakes to indemnify another or pay a specified amount or provide a designated benefit upon determinable contingencies."

[5] Towing service and emergency road service, not provided in the regular membership, are available if additional premium is paid.
[6] Act 148 of 1959.

It is obvious that the benefits heretofore mentioned come clearly within this definition of insurance. Certainly, there is a contract, in which the Arkansas Motor Club, for a pecuniary consideration, promises to provide specific benefits previously set forth to the holder of the membership. Both the card and the certificate contain provisions wherein the club undertakes to indemnify the member, "or pay a specified amount," or "provide a designated benefit upon determinable contingencies." Of course, the certificate is actually "straight-out" insurance, but even the services mentioned on the membership card, *viz*, bail bond service, legal service, etc., are benefits provided under the contract which accrue upon the happening of a determinable contingency, and are therefore insurance benefits. Other courts have so held. In *National Auto Service Corp.* v. *State,* 55 S. W. 2d 209, the Court of Civil Appeals of Texas held that a membership certificate which provided that, for annual dues, the corporation would repair accidental damage to a member's automobile in a specified amount, was an insurance contract, even though the certificate contained the following clause:

"It must be clearly understood that this is not insurance, as the corporation never pays its members any money, as indemnity, except to repair any damage to member's automobile at the corporation's authorized repair shop as hereinabove provided."

The court then said:

"What constitutes insurance has been defined by statute in many states, and has been frequently defined by the courts. Its essential elements as relate to property are that it provides, for a consideration, indemnity against loss or damage to property in which the assured has an interest which may result from some uncertain or unforeseen contingency."

In *Texas Association of Qualified Drivers, Inc.* v. *State,* 361 S. W. 2d 580, the proof reflected that appellant was organized as an association of automobile drivers, and association memberships were solicited and sold. The benefit received by members was a reimburse-

ment (up to specified amounts) for attorneys' fees incurred by members when involved in certain moving traffic violations. The court said:

"The sole question for decision is whether the reimbursement to members for attorneys' fees incurred by them as above set forth constitutes insurance. * * *

"There is no statutory general definition of the word 'insurance' in Texas. However, insurance has been defined by the Appellate Courts of Texas as ' "An undertaking by one party to protect the other party from loss arising from named risks, for the consideration and upon the terms and under the conditions recited." Whether or not a contract is one of insurance is to be determined by its purpose, effect, contents, and import, and not necessarily by the terminology used, and even though it contains declarations to the contrary.' (Citing *National Auto Service Corporation* v. *State, supra*.) It has also been defined as 'a contract by which one party for a consideration assumes particular risks of the other party and promises to pay him or someone named by him a certain or ascertainable sum of money on a specified contingency.' (Citing case.)

"Here the purpose of the contract made by appellant with its members for a stated consideration was to indemnify or reimburse the holder of a membership certificate for payments incurred by the member for attorneys' fees in the defense of a moving traffic violation in which the member was involved under certain conditions and within the limitations set forth in the certificate. Under the above definitions of insurance it is clear that the contract between appellant and its members constitutes an insurance contract."

In *Continental Auto Club, Inc.* v. *Navarre, Commissioner of Insurance*. 60 N. W. 2d 180, membership in an automobile club entitled members to attorneys' services to the extent of dollar limitation designated for various types of service, and bail for club members under certain conditions was also provided. The Supreme Court of Michigan, though there was no statutory definition of

insurance in that state, held "that by engaging in the business of furnishing its members under its contract, the benefits hereinbefore recited, the plaintiff club was and is in fact engaging in the business of insurance." Other cases could be cited, but actually, our own statutory definition of "insurance" is sufficient to determine the matter.

In accordance with the views herein expressed, the judgment is reversed and the cause remanded to the Circuit Court with directions to enter an order which will result in the Commissioner of Labor setting aside his Determination of Coverage, and entering, in lieu thereof, an order not inconsistent with this opinion.