**ALLIED FIDELITY CORPORATION, f/k/a, William E. Roe, Allied Agents, Inc., Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 77–1415.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1977.

Decided March 23, 1978.

Charles W. Davis, Chicago, Ill., for petitioner-appellant.

K. Martin Worthy, Washington, D. C., for amicus curiae.

Gilbert E. Andrews, William A. Whitledge, Attys., Tax Div., Dept. of Justice, Washington, D. C., Leon G. Wigrizer, Internal Revenue Service, Washington, D. C., for respondent-appellee.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

The single issue presented in this appeal is whether the wholly owned subsidiary of appellant, the Allied Fidelity Insurance Corporation (Allied), is entitled to be classified as an insurance company under the provisions of 26 U.S.C. §§ 831 and 832.

Allied, an Indiana corporation whose principal offices are located in Indianapolis, Indiana, exists as a wholly owned subsidiary of the taxpayer, Allied Fidelity Corporation. Since 1969 Allied has engaged primarily in the business of writing fidelity and surety bonds. During 1971, about 91% of Allied's business was in the writing of surety bail contracts and 9% in fidelity and other surety bonds. In 1972, about 64% of Allied's business was in surety bail contracts, about 10% in fidelity and other surety bonds, and the remaining 26% in automobile insurance. Allied amended its articles of incorporation during 1972 in order to permit the insurance of a wide range of casualty and other risks. Since its incorporation, Allied has filed annual statements with the insurance regulatory authorities of the states in which it was authorized to do business. For these purposes, Allied utilized forms approved by the National Convention of Insurance Commissioners and its tax accounting techniques were consistent with those Convention standards and other generally accepted accounting principles for insurance companies.

The appellant and Allied filed consolidated income tax returns for the years in question, 1971 and 1972. For both these returns, the taxable income was calculated in accordance with the provisions of the Internal Revenue Code, specifically 26 U.S.C. § 832. The appellee, Commissioner of Internal Revenue, determined that the appellant was deficient in its tax payments upon the basis that Allied was not an insurance company during 1971 and 1972 and that, as a result, § 832 did not apply. The tax liability owed was calculated to be $26,586.57 for 1971 and $73,592.10 for 1972.

Appellant brought an action in the United States Tax Court which determined on September 27, 1976, that Allied did not qualify as an insurance company during the taxable years in question for purposes of §§ 831 and 832 of the Code and that, therefore, its accounting treatment of certain income and deduction items was improper. The basis for this determination was the tax court's acceptance of the Commissioner's assertion that the writing of surety bail contracts, which constituted the majority of Allied's business, did not constitute the writing of insurance contracts.

█ Insurance companies, other than life and mutual, are taxed in accordance with the provisions of 26 U.S.C. §§ 831 and 832. Unfortunately, neither of these sections provides a definition of the term "insurance company". However, we do gain some guidance from the regulations promulgated

under § 831 which define "insurance company" by reference to the definition in the regulations under § 801 of the Code. Treas. Regs. § 1.831–1(a) (1960). The regulations under § 801, as are relevant here, provide that:

> Though its name, charter powers, and subjection to State insurance laws are significant in determining the business which a corporation is authorized and intends to carry on, the character of the business actually done in the taxable year determines whether it is taxable as an insurance company under the Code. Treas.Regs. § 1.801–1(b)(2) (1960).

This definition is the cumulative result of a series of cases decided in the late 1920's and early 1930's. *Bowers v. Lawyers Mortgage Co.*, 285 U.S. 182, 52 S.Ct. 350, 76 L.Ed. 690 (1932); *United States v. Home Title Insurance Co.*, 285 U.S. 191, 52 S.Ct. 319, 76 L.Ed. 695 (1932); *United States v. Cambridge Loan and Building Co.*, 278 U.S. 55, 49 S.Ct. 39, 73 L.Ed. 180 (1928). In *Bowers*, the Supreme Court was faced with the similar question of whether the taxpayer there involved should be permitted to be taxed as an insurance company. The Court established as its test the language which subsequently became incorporated into Treas. Regs. § 1.801–1(b):

> While name, charter powers, and subjection to state insurance laws have significance as to the business which a corporation is authorized and intends to carry on, the character of the business actually done in the tax years determines whether it is taxable as an insurance company. 285 U.S. at 188, 52 S.Ct. at 353.

Appellant argues that the first three factors mentioned in the test should be given great and possibly even determinative weight. Yet, we feel that the language of the regulation is plain and will give the proper deference to the expertise of the Internal Revenue Service in matters such as this. The phraseology of the regulation is clear. The first three elements, name, charter powers, and subjection to State insurance laws, should be "significant" in our evaluation. But, the "character of the business actually done" will be the standard by which we will determine if appellant is taxable as an insurance company under the Code.

■ There is no doubt that Allied's name included the word "Insurance". It is also clear that the company was organized under the Indiana insurance laws and that the corporate charter stated that Allied was organized for the purpose of writing the kinds of insurance and reinsurance specified in subdivision (k) of Class II of § 59 of the Indiana Insurance Law of 1935. The Certificate of Incorporation set forth the language of that statutory provision verbatim. In both Allied's original certification and its annual recertifications, the Insurance Commissioner specifically recognized that the statutory definitions of the types of insurance which Allied was authorized to write included surety bail bonds. While such characterizations may be significant, they are not controlling for the reason that a state classification of a corporation as an insurance company is not necessarily binding on the Commissioner for Federal tax purposes. *Commissioner of Internal Revenue v. Idaho Power Co.*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974); *Bowers v. Lawyers Mortgage Co., supra*; *Old Colony Railroad Co. v. Commissioner of Internal Revenue*, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484 (1932). The result is that while we must keep the factors mentioned above in mind, we must, in the final analysis, review the nature of the system of bail and how it relates to the characteristics of an insurance contract before we can finally determine the "character of the business actually done" by Allied in 1971 and 1972.

As the bail system has developed in the United States, the accused may enjoy his freedom prior to trial if he gives sufficient monetary security as assurance that he will appear. If he fails to appear, the security is forfeited as a penalty. *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). It has become a practice for commercial institutions such as Allied to provide the amount of that monetary security upon payment of a fee by the accused. The theory adopted by the courts was that the bondsman's con-

tract with the court requires him to produce the accused or suffer forfeiture of the monetary security as a penalty. Due to the bondsman's potential liability, he originally had broad powers over the person of the accused in order to assure his appearance before the court. *Taylor v. Taintor,* 16 Wall. 366, 21 L.Ed. 287 (1872). While appellant argues that this analysis of bail is outdated and contrary to modern realities of the industry, we must disagree. As recently as *United States v. Holmes,* 452 F.2d 249, 261 (7th Cir. 1971), we cited *Taylor v. Taintor* for the proposition that although an accused may be at large as a result of his having been admitted to bail, in contemplation of the law he remained in custody. *See also Continental Casualty Co. v. United States,* 314 U.S. 527, 62 S.Ct. 393, 86 L.Ed. 426 (1942); *United States v. Davis,* 202 F.2d 621, 625 (7th Cir. 1953).

Appellant also contends that the interest of the United States or the particular state exercising criminal jurisdiction over the accused is wholly pecuniary consisting of a purely financial arrangement. It seems to us that the exact opposite is true. The interest of the government is impecuniary and non-financial. That interest can be defined as seeing that those accused of crimes are tried and, if convicted, punished by the courts. Upon forfeiture, the payment to the United States, or to the courts of a state, is simply a penalty against the surety for failing to perform on its contract to produce the accused for trial. The interest in the criminal justice system is not economic but, rather, is the socially desirable end of properly punishing those convicted of crimes. The payment of a forfeiture by a surety cannot compensate the government for the loss of that goal.

On the other hand, the common definition for insurance is an agreement to protect the insured against a direct or indirect economic loss arising from a defined contingency whereby the insurer undertakes no present duty of performance but stands ready to assume the financial burden of any covered loss. 1 Couch on Insurance 2d § 1:2 (1959). As the tax court below noted, an insurance contract contemplates a specified insurable hazard or risk with one party willing, in exchange for the payment of premiums, to agree to sustain economic loss resulting from the occurrence of the risk specified and, another party with an "insurable interest" in the insurable risk. It is important here to note that one of the essential features of insurance is this assumption of another's risk of economic loss. 1 Couch on Insurance 2d § 1:3 (1959).

Appellant argues that the insurable risk of the state in a criminal bail contract is an economic one. We cannot agree. The fallacy to appellant's approach is that they have analyzed the bail arrangement only from the point of view of Allied, ignoring the other two parties to what is essentially a tri-party arrangement. From Allied's position as surety, the transaction may appear to be essentially a pecuniary one but, as we have stated above, the loss to the state by an accused fleeing, which is the "risk" to the state, may be societal, legal, or moral, but certainly is not merely a pecuniary one. This is best exemplified by the fact that if a forfeiture payment by Allied were true insurance, that payment would make the state whole, fully compensated for its loss. Yet, as is obvious, the state can only be made whole by the recapture of the accused and the resulting vindication of the rights of society. For it is society that the criminal process protects and the payment of a sum by Allied does not satisfy that interest until the state regains the ability to punish those who break the law. Allied's principal obligation is to produce the accused at trial. The monetary obligation is merely an assurance of, or inducement to perform that principal obligation. *United States v. Ryder,* 110 U.S. 729, 734, 4 S.Ct. 196, 28 L.Ed. 308 (1884). Allied's contract thus resembles more a contract to perform services than a contract of insurance. The forfeiture of the surety's bond, if the accused fails to appear, is not to reimburse the state for an economic loss but serves more as a penalty for the surety's own failure to perform.

Appellant also argues that under the definition established in *Helvering v. LeGierse,* 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996

(1941), Allied was involved in the writing of insurance contracts for federal income tax purposes. In *Helvering*, the Supreme Court analyzed certain types of life insurance contracts wherein it stated, "Historically and commonly insurance involves risk-shifting and risk-distributing." 312 U.S. at 539, 61 S.Ct. at 649. Appellant argues that the "risk" of an accused failing to appear for trial is effectively shifted from the state to the surety because the cost incurred in apprehending a fleeing defendant is shifted to the surety. Further, the "risk" is effectively distributed among all of Allied's customers because the level of premiums is set at a level sufficient to cover all forfeitures.

Appellant cites *United States v. Foster*, 417 F.2d 1254 (7th Cir. 1969) and *United States v. Nell*, 160 U.S.App.D.C. 380, 515 F.2d 1351 (1975), to support its position that the risk of the disappearance of the accused is borne by the surety. Both of these cases dealt with the factors which a District Judge could properly consider in making a determination to remit all or a portion of a forfeited bond pursuant to Rule 46 of the Federal Rules of Criminal Procedure. However, neither case can be said to stand for the proposition that the cost of reacquiring jurisdiction over the accused is borne by the surety.

Appellant also asserts that the risk distribution element of the *Helvering* test is met by Allied because the amount of premiums collected must be adequate to cover all forfeitures. Yet, the record does not reveal any evidence that the level of premiums are based upon any projections as to the amount of forfeitures incurred. Indeed, the pervasive general rule is that the charge to an accused for a corporate bail bond is simply a flat 10% of the bond. We also fail to see how the risk is distributed among all of Allied's customers when by contract, and in some states by statute,[1] the individual defendant agrees to indemnify the surety for any forfeitures incurred.

 A contract of bail requires the payment of a fee in exchange for the promise of the surety that the accused will appear. It also provides an amount to be forfeited upon the failure of that duty. It may, in fact, be more in the nature of a service agreement or a loan, but we are convinced that the tax court was correct in its determination that the writing of bail bond contracts, for federal income tax purposes, are not contracts of insurance. We are mindful of the fact that Allied remains subjected to state insurance laws and that its name and charter powers indicate its intention to operate as an insurance company. But the test established by Treas.Regs. § 1.801–1(b) makes it clear that "the character of the business actually done" will determine whether an entity is taxable as an insurance company. For the reasons stated above, we conclude today that for the taxable years in question Allied did not qualify as an insurance company for purposes of §§ 831 and 832 of the Code and that, accordingly, the tax court's determination that Allied's accounting treatment of certain income and deduction items was improper is affirmed.

While not specifically raised by the parties, we are cognizant of the fact that when the Commissioner determines that a company does not qualify under §§ 831 and 832 because of the fact that a majority of its business involves the writing of bail bond contracts, such company will be penalized to the extent that it does not get the benefit of these tax provisions for its other types of genuine insurance activity. That situation is not here presented since the activities of Allied were predominantly in the area of bail bond contracts. Accordingly, what our position would be if a different fact situation were presented we do not now conclude.

AFFIRMED.

---

1. *See e. g.*, Ind.Code § 35–1–22–10 (1905).