2013 UT App 279

**Wayne CARLOS, Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SERVICES and Stephen Thorsted, Respondents.**

No. 20120948–CA.

Court of Appeals of Utah.

Nov. 21, 2013.

Michael D. Zimmerman, Julie J. Nelson, and Randall T. Gaither, Salt Lake City, for Petitioner.

Amanda B. McPeck, for Respondent.

Department of Workforce Services Stephen Thorsted, Respondent Pro Se.

Judge JAMES Z. DAVIS authored this Opinion, in which Judges GREGORY K. ORME and CAROLYN B. McHUGH concurred.

DAVIS, Judge:

¶ 1 Wayne Carlos dba AAA Bail Bonds (AAA) seeks review of the Department of Workforce Services Appeals Board's (the Board) decision that Stephen Thorsted (Claimant) is eligible for unemployment benefits. AAA contends that the Board based its decision on an erroneous interpretation of provisions contained in the Federal Unemployment Tax Act (FUTA), *see* 26 U.S.C. § 3306 (2006); the Utah Employment Security Act (the UESA), *see* Utah Code Ann. §§ 35A–4–204 to –205 (LexisNexis 2011); and Title 31A of the Utah Code (the Utah Insurance Code). We agree and set aside the Board's decision.

## BACKGROUND

¶ 2 Claimant began working with AAA as a bail bond producer in January 2010, in accordance with the requirement that a bail bond producer be associated with an authorized surety, *see* Utah Code Ann. § 31A–35–402(2) (LexisNexis 2010). As a result, Claimant "began providing services to AAA" and obtained most of his clients from calls to AAA that were automatically rerouted to his cell phone. AAA's contact information was included on a list of bail bond companies made available to individuals in jail, and calls to AAA's telephone number were forwarded to its bail bond producers' personal telephones. Every time Claimant wrote a bond, he would charge the customer a premium. Forty percent of the premium was Claimant's compensation, and 60% went to AAA. When customers paid the premium in cash, which was most of the time, Claimant paid himself his 40% share and sent AAA its 60% share. AAA would process check and credit card payments made by customers and send Claimant 40%. If a customer failed to show up for court or if there was an error in the way the bond was filled out, AAA was liable for the entire amount of the bond. AAA could recover an agreed-upon percentage from Claimant as losses resulting from his having written an unreasonably risky bond or having incorrectly completed the bond.

¶ 3 By the end of 2011, AAA became concerned that Claimant was not completing necessary paperwork in a timely fashion and was taking too many risks in the bonds he was writing and, in turn, exposing AAA to too much liability. AAA terminated its relationship with Claimant in February 2012 after a brief period of probation-like supervision meant to remedy Claimant's excessive risk-taking. Claimant filed a claim for unemployment benefits that AAA contested. An Administrative Law Judge (ALJ) resolved the benefits request in Claimant's favor.

¶ 4 AAA appealed the ALJ's decision to the Board. AAA argued that Claimant's employment fell within one of the several exemptions in the UESA that limit the classes of individuals eligible to receive unemployment benefits, *see id.* § 35A–4–205(1)(a)–(p) (2011); *accord* 26 U.S.C. § 3306(c)(1)-(21) (2006). The UESA does this by limiting what types of employment, i.e., employers, are subject to the Act's provisions. In particular, AAA contended that Claimant was an insurance agent and fell within the UESA's exclusion that exempted "service performed by an individual for a person as an insurance

agent or as an insurance solicitor, if all the service performed by the individual for that person is performed for remuneration solely by way of commission" and if the service is "also exempted under [FUTA]," *see* Utah Code Ann. § 35A–4–205(1), (1)(*l* ); *see also* 26 U.S.C. § 3306(c)(14) (exempting insurance agents that are paid by commission from the meaning of "employment" under FUTA); Utah Admin. Code R994–205–105 (implementing the Utah statute). The Board determined that Claimant was not an "insurance agent" and that he was not paid "solely by way of commission" under the UESA, thereby concluding that AAA is subject to the UESA's provisions.[1] AAA seeks review of the Board's decision.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 5 The Board's decision that bail bond agents are not insurance agents, and therefore not exempt under the UESA, is based on its interpretation of the applicable statutes, which presents a question of law that we review for correctness. *See SF Phosphates LC v. Auditing Div., Utah State Tax Comm'n*, 972 P.2d 384, 385 (Utah 1998). The Board's determination that Claimant was not paid solely by commission presents "a traditional mixed question of law and fact." *See Murray v. Labor Comm'n*, 2013 UT 38, ¶ 24, 308 P.3d 461. Our review of "a mixed question can be either deferential or nondeferential." *Id.* ¶ 36 (providing factors to consider when making this determination). Here, the Board's decision was "law-like" because it was based on "the legal effect of the facts," *see id.* ¶ 40, and not "fact-like" because it did not depend on "the demeanor or credibility of witnesses," *see id.* ¶ 39 (internal quotation marks omitted). Accordingly, we review the Board's decision that Claimant was not paid solely by way of commission without deference. *See id.* ¶ 40.

## ANALYSIS

¶ 6 For the UESA's insurance agent exemption to apply, AAA needed to demonstrate that (1) Claimant "performed [services] . . . for a person as an insurance agent or as an insurance solicitor," (2) the services were "performed for remuneration solely by way of commission," and (3) such "services are also exempted under [FUTA]." *See* Utah Code Ann. § 35A–4–205(1)(*l* ) (LexisNexis 2011). We address each element in turn.

### I. Claimant Was an Insurance Agent.

■ ¶ 7 The terms "insurance agent" and "bail bond producer" are not defined in the relevant statutory and administrative provisions. AAA contends that bail bond producers are insurance agents and, for support, cites the legislature's decision to include the Bail Bond Act within the framework of the Utah Insurance Code. *See generally id.* §§ 31A–35–101 to –704 (LexisNexis 2010 & Supp.2013). AAA also relies on other sections of the Insurance Code that directly address bail bonds within the same context as what the Board deemed "traditional insurance." *See, e.g., id.* § 31A–1–301(12) (Supp. 2013) (defining the term "Bail bond insurance" under the general provisions of the Insurance Code); *id.* § 31A–4–102(2) (2010) (recognizing "bail bond surety compan[ies]" as insurers eligible to "conduct an insurance business in Utah"); Utah Admin. Code R590–186–1 to –14 (regulating the bail bonds business within the rules established by the Insurance Department in accordance with the Utah Insurance Code); Utah Admin. Code R590–196–1 to –9 (same).

¶ 8 The Board argues that because "[t]he Utah legislature . . . has the authority to define employees for the purposes of the [UESA] without regard to the Utah Insurance Code," the legislature's omission of a definition from the UESA amounts to a grant of discretion to the Board to provide its own

1. After having determined that Claimant was not an insurance agent under the UESA, the Board considered whether Claimant was an independent contractor in light of another exemption under the UESA, *see* Utah Code Ann. § 35A–4–204(3) (LexisNexis 2011) (exempting work performed by independent contractors). The Board concluded that Claimant was an employee and not an independent contractor, thereby qualifying Claimant for unemployment benefits under the UESA. Because we determine that Claimant was an insurance agent, exempting his services with AAA from the UESA, we do not consider the parties' arguments pertaining to the Board's interpretation of the independent contractor exemption.

definition. In its analysis, the Board appears to have relied on language in rule R994–205–105 of the Utah Administrative Code to differentiate a bail bond producer from an insurance agent. That rule states,

> Employment does not include services performed as an insurance agent or solicitor if payment for such services is solely by way of commission.... An insurance solicitor is an employee of an insurance agent and is empowered to sell insurance on behalf of the agent. The solicitor usually does not have binding authority, and the business generated by the solicitor is usually owned by the agent, and not the solicitor.

Utah Admin. Code R994–205–105. The Board focuses on the language describing an insurance solicitor as "empowered to sell insurance," *see id.* The Board reasoned that though a bail bond "could be considered a type of insurance taken out by the court system," Claimant's role in issuing bail bonds does not amount to " 'sell[ing]' insurance," as required by the rule. Rather, Claimant "issued time-limited bonds on select individuals." The Board further observed that Claimant "did not seek out new business in the manner of an insurance salesperson" but that individuals seeking bail bonds "sought out [AAA]'s service and in turn the Claimant assisted them."

¶ 9 Bail bond producers, however, are not permitted to "solicit business in or about" the locations where they are most likely to find customers—"where persons in the custody of the state or any local law enforcement or correctional agency are confined" and in "any court." Utah Code Ann. § 31A–35–701(1)(a) (LexisNexis 2010). The Board's consideration of Claimant's failure to "seek out new business in the manner of an insurance salesperson" as an important factor in determining whether the bail bond producer was " 'sell[ing]' insurance" within the meaning of rule 994–205–105 is in direct conflict with the statutory provision restricting a bail bond producer's ability to do just that. *Cf.* Utah Admin. Code R994–204–303, – 303(1)(b)(v) (listing advertising efforts as a factor to consider in the context of determining an individual's status as an independent contractor, and noting that "[t]he degree of

importance of each factor varies" and that "some factors do not apply to certain services and, therefore, should not be considered"). Additionally, the Board's attempt to distinguish " 'sell[ing]' an insurance policy" from "issu[ing] time-limited bonds" is, in this situation, an irrelevant distinction. As AAA points out, "the UESA uses neither 'sell' nor 'issue,' exempt[ing] all *'service.'* " *See* Utah Code Ann. § 35A–4–205(1)(*l* ) (emphasis added). Because "an administrative grant to administer a statute is not to be confused with a grant of discretion to interpret the statute," *Murray,* 2013 UT 38, ¶ 29, 308 P.3d 461 (citation and internal quotation marks omitted), the Board's interpretation and application of the UESA is invalid if it "confer[s] greater rights or disabilities than the underlying statute" or is otherwise in "conflict with [the] design of [the] Act," *see Airport Hilton Ventures, Ltd. v. Utah State Tax Comm'n,* 1999 UT 26, ¶¶ 7–8, 976 P.2d 1197 (citations and internal quotation marks omitted). The Board's conclusion that bail bond agents are not insurance agents based on these points amounts to an erroneous interpretation of the relevant statute and administrative rule and is therefore invalid.

¶ 10 The Board also differentiates bail bond producers from traditional insurance agents based on the processes involved in obtaining and maintaining the relevant state licensing. As the Board explained, "[a]gents who sell traditional insurance, such as medical, life, home and auto insurance policies, must secure extensive training and education prior to receiving a license to sell such policies" and must "demonstrate to State licensing boards that [they] are competent and knowledgeable." Likewise, the Board noted that to maintain a "traditional insurance" license, agents must engage in "continuing education" akin to that required of "other professionals, such as medical care providers and attorneys." The Board explained that bail bond producers, by contrast, "need only fill out an application and pay a fee to receive a license"—there are no competency or continuing education requirements. Given these differences, the Board concluded that "[t]here is no evidence the Legislature intended to equate bail bond producers with

insurance professionals in regards to the unemployment insurance program."

¶ 11 However, the UESA does not divide insurance agents into subcategories based on their training or licensing procedures in order to determine which agents are exempt. Rather, the UESA provides a blanket exemption for "insurance agents." Accordingly, we agree with AAA that the Board's definition of an insurance agent based on the general licensing requirements for "traditional insurance" agents impermissibly "subdivide[s] the term 'insurance agent'" in the administrative rule "so that some insurance agents fall within the statute and some do not." The Board's rule cannot "confer greater rights or disabilities than the underlying statute." *Id.* ¶ 8 (citations and internal quotation marks omitted); *cf. SF Phosphates LC v. Auditing Div., Utah State Tax Comm'n,* 972 P.2d 384, 386 (Utah 1998) ("Harmonious construction of the rule with the statute dictates that the rule's definition, which includes mining as noncommercial activity, cannot encompass transportation of ore because transportation of ore is specifically included in the statutory definition of commercial activity."). Here, the Board exceeded its authority in elevating its preferences over the policy set by the legislature. As a result, its attempt to distinguish bail bond producers from insurance agents on licensing grounds also fails.

¶ 12 Additionally, the Board's analysis rejects the Utah Insurance Code as inapplicable while simultaneously relying on provisions in the Insurance Code to differentiate "traditional insurance" agents from bail bond producers based on the training and licensing requirements for each. Though the Board did not directly cite the Insurance Code, the licensing, educational, competency, and continuing education elements described by the Board are established in the Insurance Code. *See* Utah Code Ann. §§ 31A–23a–105 to –106 (LexisNexis Supp.2013) (listing the general licensing requirements for various types of insurance agents, including bail bond producers); *id.* § 31A–35–104 (2010) (granting the insurance commissioner authority to "estab-

lish specific licensure and certification guidelines and standards of conduct for the business of bail bond surety insurance"); *id.* § 31A–35–401(1)(c) (requiring a bail bond producer to "be licensed under Chapter 23a, Insurance Marketing—Licensing Producers, Consultants, and Reinsurance Intermediaries"); Utah Admin. Code R590–244–1 (listing the statutory authorities that guide the insurance commissioner's development of licensing requirements for all insurance agents, including bail bond producers).

¶ 13 The Board's selective application of the Insurance Code is unavailing; where the Board has utilized the Insurance Code for guidance, it has done so to impermissibly read an exception into its administrative rule that narrows the UESA. Further, where the legislature has not supplied the UESA with a detailed definition of "insurance agent" and the UESA's legislative history provides little guidance,[2] we agree with AAA's resorting to the Utah Insurance Code for more information. Not only does the Insurance Code contain the Bail Bond Act, it also identifies bail bond producers within subsections detailing insurance agent licensing and training requirements. Further, it defines "insurance" to include "a contract of guaranty or suretyship entered into by the guarantor or surety as a business and not as merely incidental to a business transaction," Utah Code Ann. § 31A–1–301(86)(b)(ii) (LexisNexis Supp.2013), and describes surety insurance as including "bail bond insurance," *id.* § 31A–1–301(161)(b). Likewise, an insurer under the Insurance Code "includes a bail bond surety company." *Id.* § 31A–4–102(2) (2010). *See also id.* § 31A–1–301(86)(b)(i) (Supp.2013) (defining insurance as also including "a risk distributing arrangement providing for compensation or replacement for damages or loss through the provision of a service or a benefit in kind").

¶ 14 Thus, it is clear that the Utah Insurance Code considers bail bond producers to be insurance agents and that this conclusion

---

**2.** Interestingly, the legislative history for the Insurance Code indicates that the legislature "mov[ed] the administration of bail bond sureties from the courts to the insurance department, and provid[ed] definitions and procedures for administration." *See* Act of May 4, 1998, ch. 293, 1998 Utah Laws 1086, 1086.

is not in conflict with the UESA.[3] Accordingly, we determine that Claimant was an insurance agent under the UESA.

## II. Claimant Was Paid Solely by Commission.

¶ 15 The UESA exemption also requires Claimant to have been paid "solely by way of commission," *id.* § 35A–4–205(1)(*l* ). Black's Law Dictionary defines "commission" as "[a] fee paid to an agent or employee for a particular transaction, usu[ally] as a percentage of the money received from the transaction." *Black's Law Dictionary* 306 (9th ed.2009). In comparison, Black's Law Dictionary defines "wage" as "[p]ayment for labor or services, usu[ally] based on time worked or quantity produced; specif[ically], compensation of an employee based on time worked or output of production." *Id.* at 1716. Here, Claimant did not receive an hourly wage, nor was his income necessarily reliant on the quantity of bail bonds issued; he was paid 40% of the premium collected on each bail bond he issued. We do not consider Claimant's final few weeks of employment, during which time he was required to submit 100% of the premiums he collected to AAA, who would then pay Claimant his 40% share, to have transformed the payment scheme to that of a wage. Likewise, the few transactions involving check or credit card payments that necessarily had to be processed by AAA before Claimant could receive his 40% do not evidence a change in the commission-based payment structure. Accordingly, we determine that Claimant was paid "solely by way of commission." *See* Utah Code Ann. § 35A–4–205(1)(*l* ).

## III. Claimant Would Be Exempt Under FUTA.

¶ 16 Last, the UESA requires that Claimant's services also be "exempted under [FUTA]." *See id.* § 35A–4–205(1). As previously mentioned, FUTA contains the same insurance agent exemption as the UESA, employing virtually identical language, and similarly does not define "insurance agent." *Compare id.* § 35A–4–205(1)(*l* ), *with* 26 U.S.C. § 3306(c)(14) (2006). The omission of a definition of "insurance agent" from FUTA and the lack of a federal variant akin to the Utah Insurance Code to look to for guidance leads us to the definition provided by the Utah legislature in the Utah Insurance Code. Accordingly, we determine that the same analysis conducted above demonstrates that Claimant would be exempt under FUTA as an insurance agent.

## CONCLUSION

¶ 17 Although "[s]tatutes which provide for exemptions should be strictly construed, and one who . . . claims [an exemption] has the burden of showing his entitlement to the exemption," *Parson Asphalt Prods. v. Utah State Tax Comm'n*, 617 P.2d 397, 398 (Utah 1980) (footnotes omitted), we determine that AAA has demonstrated that the UESA's insurance agent exemption applies here. Claimant's services as a bail bond producer with AAA amounted to that of an insurance agent under the UESA and FUTA. Claimant was also paid solely by commission. Accord-

---

**3.** Several other jurisdictions have adopted similar reasoning. *See, e.g., Buckman v. American Bankers Ins. Co. of Fla.,* 924 F.Supp. 1156, 1157 (S.D.Fla.1996) (determining for purposes of the Federal Truth in Lending Act that a "transaction . . . whereby [a party] arrange[s] for [a bail bond company] to post a criminal bail bond insured by Defendant American Bankers . . . [constitutes] the business of insurance"), *aff'd,* 115 F.3d 892 (11th Cir.1997); *Arkansas Motor Club, Inc. v. Arkansas Emp't Sec. Div.,* 237 Ark. 419, 373 S.W.2d 404, 407 (1963) (concluding that because appellant sold memberships that included insurance policies, and because the insurance covered "bail bond service" "upon the happening of a determinable contingency," the appellant's sales-

men were insurance agents not subject to unemployment compensation). *But see Allied Fid. Corp. v. Commissioner of Internal Revenue,* 66 T.C. 1068, 1074, 1976 WL 3590 (1976) ("[W]e are unable to ascribe much significance to the fact that [the petitioner's] bail bonding business was subject to regulation under the insurance laws of the various States in which it did business. Such regulation amounts to no more than a recognition that a corporate bail bondsman is ordinarily an insurance or surety company, not that bail bonding is insurance [for federal income tax purposes]. Professional bondsmen who are individuals frequently are not regulated under State insurance codes." (citation omitted)), *aff'd,* 572 F.2d 1190 (7th Cir.1978).

ingly, the Board's decision awarding Claimant unemployment compensation is set aside.