| | | |
|---|---|---|
| HENRY L. KLEIN, THE SUCCESSION OF FREDERICK P. HEISLER AND LEVY GARDENS PARTNERS 2007 LP | * | NO. 2025-CA-0127 |
| | * | COURT OF APPEAL |
| | * | FOURTH CIRCUIT |
| VERSUS | * | STATE OF LOUISIANA |
| LEWIS TITLE INSURANCE COMPANY, INC. AND LISKOW & LEWIS, PLC AND JEFFREY MARTIN "JEFF" LANDRY, ATTORNEY GENERAL OF THE STATE OF LOUISIANA | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-01517, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Rachael D. Johnson, Judge Karen K. Herman, Judge Nakisha Ervin-Knott)

Henry L. Klein
6244 Marshal Foch Street
New Orleans, LA 70124

Michael G Bagneris
BAGNERIS PIEKSEN & ASSOCIATES, LLC
935 Gravier Street, Suite 2110
New Orleans, LA 70112

   COUNSEL FOR PLAINTIFFS/APPELLANTS

Nicholas J. Wehlen
Phillip A. Wittmann
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, LA 70112

   COUNSEL FOR DEFENDANTS/APPELLEES

     **AFFIRMED; ANSWER TO APPEAL DENIED AS MOOT SEPTEMBER 29, 2025**

Appellants/Cross-Appellees, plaintiffs Henry L. Klein, the Succession of Frederick P. Heisler and Levy Gardens Partners 2007 LP ("Levy Gardens" and all plaintiffs collectively referred to as "Appellants"), seek reversal of the May 5, 2023 trial court judgment, denying their petition for declaratory judgment seeking a declaration that title insurance is not insurance but a contract of warranty. Appellees/Cross-Appellants, defendants Lewis Title Company, Inc. ("Lewis Title"), and Liskow and Lewis, PLC ("Liskow") (collectively referred to as "Appellees"), answered the appeal seeking review of the trial court's judgment denying their exception of *res judicata*. For the following reasons, the trial court's judgment is affirmed. The Appellees' Answer to Appeal is denied as moot.

## FACTS AND PROCEDURAL HISTORY

In 2008, Appellants purchased property in New Orleans East with the intent to develop the property into a multi-family housing complex. Appellants purchased three title insurance policies through Lewis Title. The title insurance policies were

1

issued by Commonwealth Land Title Insurance Company ("Commonwealth").[1] The development envisioned by Appellants did not occur due to zoning issues, which were allegedly not disclosed at the closing.

Thereafter, on June 23, 2010, Appellants filed suit against Lewis Title and Commonwealth in the Civil District Court for the Parish of Orleans ("CDC"), seeking recovery of damages suffered as a result of the loss of right to develop the property. *Levy Gardens Partners 2007, LP, v. Lewis Title Ins. Co.*, CDC No. 2010-5306. Appellants subsequently dismissed Lewis Title from the litigation on the basis of non-suit, and the matter was removed to the United States District Court for the Eastern District of Louisiana ("the Eastern District Court") by Commonwealth. After trial, the federal district court awarded Appellants damages in the amount of $605,000.00 against Commonwealth. *Levy Gardens Partners 2007, LP, v. Lewis Title Ins. Co.*, 10-CV-04261 (E.D. La. Dec. 29, 2011).

Appellants filed another suit in CDC on April 2, 2012, *Levy Gardens Partners 2007, LP, v. Comm'r of Admin.,* CDC No. 2012-3236, alleging that Lewis Title and Commonwealth, are liable for negligent abstracting and asserting claims for negligent misrepresentation of the insurance policies and fraud. Pursuant to a motion of removal filed by Commonwealth, the lawsuit was removed to the Eastern District Court. Appellants filed a motion to remand that was denied by the federal district court. *Levy Gardens Partners 2007, LP v. Comm'r of Admin.,* 12-CV-01340, (E.D. La. Aug. 21, 2012). The Eastern District Court found that all

---

[1] Appellants Henry Klein and the Succession of Frederick P. Heisler are not named insureds under any of the three policies.

3

non-fraud claims asserted against Lewis Title were preempted by La. R.S. 9:5606.[2] The Court later determined that Appellants did not assert a cause of action for fraud against Lewis Title and dismissed it from the litigation. *Levy Gardens Partners 2007, LP v. Comm'r of Admin.,* 12-CV-01340, (E.D. La. Oct. 30, 2012).

Levy Gardens filed a third-party demand in *First NBC v. Levy Gardens Partners 2007, LP*, CDC No. 2017-2315, on April 11, 2017, including Appellees as third-party defendants.[3] *First NBC v. Levy Gardens Partners 2007 LP*, 17-CV-06652, 2019 WL 13227263, *1 (E.D. La. Apr. 29, 2019). Levy Gardens alleged that the Appellees were liable for negligent abstracting and sought a declaration that the policies issued by Commonwealth were not insurance contracts. First NBC was later closed by the Louisiana Office of Financial Institutions and the Federal Deposit Insurance Corporation in its capacity as receiver ("FDIC-R") was named

---

[2] Louisiana Revised Statute 9:5606 provides in pertinent part:

> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
>
> . . .
>
> D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

[3] In CDC No. 2017-2315, First NBC brought a foreclosure action by executory process against Levy Gardens.

as First NBC's receiver. *Id.* The FDIC-R removed the matter to the Eastern District Court. *Id.* Appellees later filed a motion to dismiss the third-party demand based upon the doctrine of *res judicata* that was granted by the Eastern District Court, which dismissed Appellees with prejudice. *Id.*, 17-CV-6652, 2019 WL 13227263, * 2.

Appellants filed the present lawsuit in April 2017, seeking declaratory judgments and damages for lost profits from the inability to develop the property as they had sought and alleged that the title insurance policies included zoning provisions that covered losses incurred if the property was not zoned to allow the planned construction of the multi-family housing unit. Appellants asserted that Lewis Title failed to identify and disclose, prior to closing, the zoning restriction that prevented it from developing the property as planned.

Appellants further pleaded that Commonwealth's policies were not insurance contracts but were contracts of warranty. Appellants sought a declaratory judgment that the Commonwealth policies were contracts of warranty and as such included recovery of lost profits. They also sought declaratory judgments regarding the actions of Appellees concerning the property transaction in 2008. On March 16, 2017, Appellees removed the case to the Eastern District Court. Appellants filed a motion to remand, which was granted on July 7, 2017. *Klein v. Lewis Title Ins. Co.*, 17-CV-2205, 2017 WL 2889370 (E.D. La. Jul. 7, 2017).

During the litigation, the parties filed numerous exceptions and motions. Appellees filed an exception of *res judicata*, which was denied by the trial court on

December 12, 2017.[4] Thereafter, Appellants filed an *Ex Parte Motion to Rule Nisi*, seeking to have the trial court rule on the declaratory judgment via a summary proceeding. The trial court denied the *ex parte* motion and converted the *rule nisi* to an ordinary proceeding on August 6, 2018.

Appellees filed a motion for summary judgment in July 2018, seeking dismissal of the petition for declaratory judgment with prejudice. Appellants filed a motion for partial summary judgment on the issue of unjust enrichment Appellees filed an exception of *res judicata* on September 8, 2020, asserting that the present litigation was barred because of the prior lawsuits filed in 2010, 2012 and 2017. After a hearing on January 28, 2021, the trial court took the matter under advisement.

Appellants also filed an *ex parte* motion to enforce La. R.S. 22:532, which the trial court granted in February 2023. Thereafter, Appellees filed a motion to reconsider the February 2023 judgment in part. After holding a hearing on the motion to reconsider on March 31, 2023, the trial court denied Appellants' motion to enforce and granted Lewis Title's motion for reconsideration.[5]

After the hearing on March 31, 2023, the trial court rendered another judgment on May 5, 2023, denying Appellants' Petition for Declaratory Judgment and finding Lewis Title's Motion for Reconsideration of Order on Ex Parte Motion to Enforce La. R.S. 22:532 moot.[6] In its reasons for judgment, the trial court

---

[4] Appellees sought supervisory review of the trial court's denial of its exception of *res judicata*. This Court denied writs on February 14, 2018. *Henry L. Klein v. Lewis Title Ins. Co.* 2017-1063, unpub., (La. App. 4 Cir. 2/14/18).

[5] The judgment provides that "Defendants are not required to produce to the Plaintiffs any documentation regarding legal fees paid to Liskow and Lewis or Jones Walker related to the 2008 real estate closing at issue in this case."

[6] The trial court's judgment provided in pertinent part:

discussed Lewis Title's exception of *res judicata*, finding that the exception did not have merit.[7] The trial court, however, failed to rule upon the exception of *res judicata* in its May 5, 2023 judgment. On August 11, 2023, the trial court issued a subsequent judgment dismissing Appellants' petition with prejudice. This timely appeal followed.

## STANDARD OF REVIEW

The Louisiana Supreme Court in *Westlawn Cemeteries, L.L.C. v. La. Cemetery Bd.*, 2021-01414, pp. 11-12 (La. 3/25/22), 339 So.3d 548, 558-559 discussed the standard of review for judgments relating to declaratory judgments, stating:

> [T]he decision to grant or deny declaratory relief is left to the wide discretion of the district court. *See Louisiana Supreme Ct. Comm. on Bar Admissions ex rel. Webb v. Roberts,* 2000-2517, p. 3 (La. 2/21/01), 779 So. 2d 726, 728; *Succession of Robinson*, 52,718 (La.

---

> For limited purposes, title insurance is insurance in the State of Louisiana. The Louisiana legislature took time legislatively to set forth parameters of what constitutes title insurance. Forty-nine states have title insurance. Only one, Iowa, has a different title offering. Based upon depositions, evidence and testimony, the Court cannot make a finding that Louisiana title insurance statutes fall outside the realm of insurance.

[7] "Generally, when a trial court judgment is silent as to a claim or demand, it is presumed the relief sought was denied." *Emery v. Ben*, 2024-0018, p. 6 (La. App. 4 Cir. 5/13/24), 390 So.3d 952, 959 (quoting *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007-2371, p. 12 (La. 7/1/08), 998 So.2d 16, 26). The trial court did not mention the exception of *res judicata* in its judgment, but the court issued the following reasons for judgment in regards to its denial of Lewis Title's exception of *res judicata*:

> In 2017, the United States District Court for the Eastern District issued a judgment in this case under case no. 17-2205 *Klein, et al. vs. Lewis Title Ins. Co. Inc*. The case brought before the District Court requests for attorneys' fees pursuant to 28 U.S.C. § 1447(c) and sanctions for removal in bad faith. The Eastern District Court of Louisiana denied Plaintiffs request for attorneys' fees and declined to impose sanctions against defendants for removing the case in bad faith. This Court, taking notice of the distinct considerations asked of the Orleans Parish Civil District Court and the United States District Court for the Eastern District of Louisiana, decrees that this case is not *res judicata*.

7

App. 2 Cir. 6/26/19), 277 So. 3d 454, 458, *writ denied*, 2019-1195 (La. 10/15/19), 280 So. 3d 613. Although this decision is subject to an abuse of discretion standard of review, the judgment itself is still reviewed under the appropriate standard of review. *Fondel v. Fondel*, 2020-221, p. 4 (La. App. 3 Cir. 3/10/21), 312 So. 3d 1180, 1183, *writ denied*, 2021-0655 (La. 9/27/21), 324 So. 3d 93; *Martin v. Martin*, 52,401, p. 6 (La. App. 2 Cir. 11/14/18), 261 So. 3d 984, 989. Thus, questions of law are reviewed *de novo*, while questions of fact are subject to a manifest-error standard of review. *Fondel*, 2020-221, p. 4, 312 So. 3d at 1183. The determination of whether a statute or, in this case, an administrative rule, is constitutional presents a question of law, which is reviewed by this Court *de novo*. *See City of New Orleans v. Clark,* 2017-1453, p. 4 (La. 9/7/18), 251 So. 3d 1047, 1051 (citing *State v. Webb*, 2013-1681, p. 4 (La. 5/7/14), 144 So.3d 971, 975); *Mid-City Auto., L.L.C. v. Dep't of Pub. Safety & Corr.*, 2018-0056, p. 10 (La. App. 1 Cir. 11/7/18), 267 So. 3d 165, 175.

Likewise, the proper interpretation of statute is subject to the *de novo* standard of review, thereby giving no deference to the trial court's interpretation of same. *225 Baronne Complex v. Roy Anderson Corp.*, 2024-0401, p. 10 (La. App. 4 Cir. 1/31/25) 408 So.3d 291, 299 (citations omitted).

Appellate courts review a trial court's decision to grant or deny an exception of *res judicata* under a *de novo* standard to determine if the ruling was "legally correct or incorrect." *Alexander v. La. State Bd. of Priv. Investigator Exam'rs*, 2023-0159, pp. 26-27 (La. App. 4 Cir. 10/25/24) 409 So.3d 37, 59, *writ denied,* 2024-1438 (La. 2/25/25), 401 So.3d 659 (citing *Bd. of Supervisors of La. State Univ., Agr. & Mech. Coll. v. Dixie Brewing Co.*, 2013-0250, 0251, 0252, p. 2 (La. App. 4 Cir. 12/4/13), 131 So.3d 130, 132). However, if the trial court made any factual determinations in its *res judicata* ruling, then the appellate court reviews these under the manifest error/clearly wrong standard. *1955 Nola Holdings, L.LC. v. Windy Hill Pictures L.L.C.*, 2023-0050, p. 7 (La. App. 4 Cir. 10/2/23), 376 So.3d 200, 206 (quoting *In re Precept Credit Opportunities Fund, L.P.*, 2022-0067, 0068, p. 3 (La. App. 4 Cir. 9/16/22), 348 So.3d 844, 846).

## DISCUSSION

Appellants assign two errors on appeal: the trial court erred in failing to enforce the United States Supreme Court's decision in *Group Life v. Royal Drug Company* as the supreme law of the land, opting to give higher deference to the Louisiana Insurance Code, notwithstanding the clear mandate of the Supremacy Clause of the U. S. Constitution; and the trial court erred in failing to enforce La. C.C. article 2298 regarding "enrichment without cause" as to Liskow's Affiliated Business Arrangement ("ABA").

In its answer to the appeal, Appellees assign as error the trial court's judgment denying its exception of *res judicata*. In the alternative, Lewis Title asks this Court to grant its exception of *res judicata*.[8]

### APPLICABILITY OF *GROUP LIFE V. ROYAL DRUG COMPANY*

Appellants contend that the trial court committed legal error by failing to apply *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), and determining that Appellants were not entitled to a declaratory judgment[9] that title insurance is not insurance and that the Commonwealth policies were contracts of warranty. We disagree.

---

[8] Pursuant to La. C.C.P. article 2163(A) an "appellate court may consider a peremptory exception filed for the first time in that court if the exception is pleaded prior to a submission of the case for a decision and if proof of the ground of the exception appears of record."

[9] La. C.C.P. article 1871 allows for use of declaratory judgments.

> Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree.

In *Group Life*, the Supreme Court determined that the McCarran–Ferguson Act[10] did not apply to pharmacy agreements between Blue Shield and the individual pharmacies with which it contracted. *Id*., 440 U.S. at 213-14, 99 S.Ct. at 1074-75.  The Court found that the agreements were not "between insurer and insured." *Id*., 440 U.S. at 216, 99 S.Ct. at 1075.  "They [were] separate contractual arrangements between Blue Shield and pharmacies engaged in the sale and distribution of goods and services other than insurance."  *Id*., 440 U.S. at 216, 99 S.Ct. at 1075.  The Court recognized that:

> "The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the 'business of insurance.' Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the

---

Moreover, the purpose of La. C.C.P. art. 1871 "is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done." *Westlawn Cemeteries,*21-01414, p. 11, 339 So.3d at 558 (quoting *MAPP Const., LLC v. Amerisure Mut. Ins. Co*., 2013-1074, p. 7 (La. App. 1 Cir. 3/24/14), 143 So.3d 520, 528).  "Use of the word 'may,' rather than 'shall' evidences the legislature's intent to afford the trial court substantial discretion in deciding whether or not to render declaratory judgment." *Olano v. Karno*, 2020-0396, p. 4 (La. App. 4 Cir. 4/7/21), 315 So.3d 952, 956 (quoting *In re Interment of LoCicero,* 2005-1051, p. 4 (La. App. 4 Cir. 5/31/06), 933 So.2d 883, 886).  "A declaratory judgment is a vehicle used to 'declare rights, status, and other legal relations whether or not further relief is or could be claimed.'" *Olano*, 2020-0396, pp. 4-5, 315 So.3d at 956 (quoting *LoCicero,* 2005-1051, p. 5, 933 So.2d at 886 (quoting La. C.C.P. art. 1874)).

[10] The McCarran–Ferguson Act, 15 U.S.C.A. § 1012, provides:

> **a) State regulation**
> The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
>
> **(b) Federal regulation**
> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder." *SEC v. National Securities, Inc., supra*, [393 U.S. 453] at 460, 89 S.Ct. [564], at 568 [21 L.Ed.2d 668 (1969)].

*Id.,* 440 U.S. at 215-216, 99 S.Ct. at 1075.

In *Group Life*, independent pharmacists brought an antitrust action against Blue Shield and three pharmacies, alleging that the defendants violated the Sherman Act by entering agreements to fix the retail prices of drugs and pharmaceuticals and that the activities of defendants had constituted an unlawful group boycott. *Id.,* 440 U.S. at 207, 99 S.Ct. at 1071. The defendants argued that the agreements were exempt under the McCarran–Ferguson Act and obtained a summary judgment dismissing the plaintiff's petition. *Id.,* 440 U.S. at 207-08, 99 S.Ct. at 1071-72. The plaintiff pharmacies appealed, and the Fifth Circuit Court of Appeal reversed. *Id.*, 440 U.S. at 208, 99 S.Ct. at 1072. The United States Supreme Court granted certiorari to resolve inter-circuit conflicts, and subsequently affirmed the judgment of the appellate court. *Id*. The Court held that the pharmacy agreements were not the "business of insurance" within the meaning of § 2(b) of the McCarran–Ferguson Act. *Id*. The Court stated:

> The Pharmacy Agreements thus do not involve any underwriting or spreading of risk, but are merely arrangements for the purchase of goods and services by Blue Shield. By agreeing with pharmacies on the maximum prices it will pay for drugs, Blue Shield effectively reduces the total amount it must pay to its policyholders. The Agreements thus enable Blue Shield to minimize costs and maximize profits. Such cost-savings arrangements may well be sound business practice, and may well inure ultimately to the benefit of policyholders in the form of lower premiums, but they are not the "business of insurance."
>
> The Pharmacy Agreements are thus legally indistinguishable from countless other business arrangements that may be made by insurance companies to keep their costs low and thereby also keep low the level of premiums charged to their policyholders.

11

*Group Life,* 440 U.S. at 214-15, 99 S.Ct. at 1075.

The United States Supreme Court reiterated the criteria the Court identified in *Group Life* as relevant in determining:

> [W]hether a particular practice is part of the "business of insurance" exempted from the antitrust laws by § 2(b): *first*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry.

*Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008-09, 73 L.Ed.2d 647 (1982) (emphasis added).

The Supreme Court further recognized in *Humana Inc. v. Forsyth* that the "McCarran–Ferguson Act thus precludes application of a federal statute in face of state law 'enacted ... for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." 525 U.S. 299, 307, 119 S.Ct. 710, 716, 142 L.Ed.2d 753 (1999) (citing *Dep't. of Treas. v. Fabe,* 508 U.S. 491, 501, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993)).

In the present matter, Appellants suggest that the title insurance policies issued to it do not meet the criteria established in *Group Life* to constitute the "business of insurance" and fall within the McCarran–Ferguson Act's exemption. Title insurance in Louisiana is governed and provided for in the Louisiana Insurance Code, found in Title 22 of the Louisiana Revised Statutes. Louisiana Revised Statute 22:47 includes title insurance as insurance and defines "title insurance" as "[i]nsurance of owners of property or others having an interest therein, against loss by encumbrance, or defective titles, or adverse claim to title,

and services connected therewith." The Louisiana Title Insurance Act, enacted in La. R.S. 22:511, provides:

> A. This Subpart shall be known and cited as the "Louisiana Title Insurance Act".
>
> B. The purpose of this Subpart is to provide the state of Louisiana with a comprehensive body of law for the effective regulation and supervision of title insurance, title insurers licensed to write title insurance in this state, title insurance producers, and the escrow, accounting, closing, and settlement practices of insurers and producers wherein title insurance is issued or contemplated to be issued.

Under La. R.S. 22:517, "[e]very title insurance producer licensed in the state shall provide, in a timely fashion, each title insurer with which it places business all information the title insurer may request in compliance with the licensing and reporting requirements of the department." Further, "[a]ll title insurers and title insurance producers shall be subject to all other applicable provisions of this Title unless specifically exempted by this Subpart." La. R.S. 22:534.

The title insurance policies issued to Appellants were issued in accordance with the provisions of the Louisiana Insurance Code and the Louisiana Title Insurance Act. The United States Supreme Court recognized that a title insurance company was an "insurance company" in *United States v. Home Title Ins. Co.*, 285 U.S. 191, 52 S.Ct. 319, 76 L.Ed. 695 (1932). The Court noted that prior to the issuance of a title insurance policy, a title insurance company prepares abstracts and conducts an examination of the title and that its fee for a title insurance policy is based on a scale dependent on the face amount of the policy and includes fees for examinations, searches, and other sources incident to the transaction. *Id*. at 192-93.

In a more recent case from the federal Sixth Circuit Court of Appeal, the appellate court considered whether title insurance rate-making was the "business of

insurance" for purposes of the McCarran–Ferguson Act. *Katz v. Fid. Nat'l Title Ins. Co.*, 685 F.3d 588, 592 (6th Cir. 2012). The Sixth Circuit considered the factors enunciated in *Group Life* and *Union Labor* to determine that title insurance is the business of insurance within the meaning of the McCarran–Ferguson Act. *Id*. at 594. The *Katz* Court referenced the *Union Labor* case which recognized that the first factor, *i.e.* whether the practice has the effect of transferring or spreading a policyholder's risk, "[r]equires that the product spread some risk; it does not specify any particular quantity." *Id*. at 593 (citing *Union Labor*, 458 U.S. at 129-30, 102 S.Ct. at 3009). The court recognized that title insurance policies are priced well above most estimates of the risk involved and that "title-insurance rate-setting is an integral part of the policy relationship between the insurer and the insured; and ... is limited to entities within the insurance industry." *Id.* (quoting *Union Labor,* 458 U.S. at 129, 102 S.Ct. 3002). The *Katz* court concluded, "[b]ecause title-insurance rate-setting spreads some risk, is a foundational piece of the policy relationship between the insurer and the insured, and has no application outside the context of insurance, it is clearly part of the business of insurance . . . ." *Id*.

Applying the criteria established in *Group Life* to the present matter supports a finding that the title insurance policies issued to Appellants are regulated by the Louisiana Insurance Code and the Louisiana Title Insurance Act and are within the business of insurance. As noted above in *Katz*, title insurance spreads a policyholder's risk, the issuance of such policies is part of the policy relationship between the insurer and the insured, and the issuance of title insurance policies is limited to entities within the insurance industry. The trial court did not err in determining that the title insurance policies issued to Appellants were within the

"business of insurance" and fell within the exemption provided in the McCarran–Ferguson Act.

As such, Appellants were not entitled to declaratory judgments that the policies should be interpreted as contracts of warranty and entitled to damages for alleged violations under the contract of warranty law.

## UNJUST ENRICHMENT

Appellants also asserts that the trial court erred in failing to enforce La. C.C. article 2298, regarding "enrichment without cause," as to the Liskow ABA. Recovery of damages under the theory of unjust enrichment is outlined in La. C.C.P. article 2298, which provides:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

> The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.

> The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.

The Louisiana Supreme Court held that an unjust enrichment claim is established by five elements:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause' for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff.

*Baker v. Maclay Properties Co.,* 1994-1529, p. 18 (La. 1/17/95), 648 So.2d 888, 897 (citations omitted).

15

This Court has recognized that all five elements must be met in order to succeed upon a claim for unjust enrichment. *See 3525 Prytania St. Condo. Ass'n v. Prytania Inv. Properties*, 2023-0077, p. 6 (La. App. 4 Cir. 12/13/23), 382 So.3d 1028, 1033; *see also Fagot v. Parsons,* 2006-1528, p. 4 (La. App. 4 Cir. 5/9/07), 958 So.2d 750, 752.  Further, under La. C.C. article 2298, the remedy of unjust enrichment is "only applicable to fill a gap in the law where no express remedy is provided." *Walters v. MedSouth Record Mgmt.,* 2010-0353, p. 2 (La. 6/4/10), 38 So.3d 243, 244 (quoting *Mouton v. State,* 525 So.2d 1136, 1142 (La. App. 1 Cir. 1988)). In *Fagot,* this Court affirmed the dismissal of the plaintiff's petition on an exception of no cause of action because of the existence of alternative remedies against parties other than the defendant in the action. 2006-1528, p. 5, 958 So.2d at 753.

In the present matter, Appellants do not assert a cause of action for unjust enrichment in its petition for declaratory judgment, rather it asserts claims of breach of contract, fraud, intentional and negligent misrepresentation, false and deceptive advertising and negligence against Appellees.  The trial court did not err in denying Appellants' claim for unjust enrichment because they failed to show that there are no other alternative remedies against Appellees.

### *EXCEPTION OF RES JUDICATA*

In its Answer to Appeal, Appellees seek review of the trial court's ruling denying the exception of *res judicata*.  In the alternative, Appellees ask this Court to grant its exception of *res judicata*. We pretermit these arguments for the reasons that follow.

At this point in the litigation, whether the trial court erred in denying Appellees' exception of *res judicata* is moot after our finding that the trial court

did not err in denying Appellants' petition for declaratory judgment and dismissing the petition with prejudice. Louisiana jurisprudence is clear that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to such controversies. *Texas Brine Co. v. Naquin*, 2019-1503, pp. 14-5 (La. 1/31/20), 340 So.3d 720, 729-30; *Cat's Meow, Inc. v. City of New Orleans Through Dep't. of Finance*, 1998-0601, p. 8 (La. 10/20/98), 720 So.2d 1186, 1193; *Granaio, LLC v. City of New Orleans*, 2024-0188, p. 4 (La. App. 4 Cir. 12/30/24), 408 So.3d 241, 244.

In the present matter, Appellees' exception of *res judicata* no longer presents a controversy because the trial court did not err when it denied the Appellants' petition for declaratory judgment with prejudice. A ruling on the exception of *res judicata* would have no practical significance given the dismissal of Appellants' petition with prejudice. Therefore, a ruling on the exception of *res judicata* is moot as it would serve no useful purpose and give no practical relief or effect.

## DECREE

For the foregoing reasons, we affirm the May 5, 2023 trial court judgment denying Appellants' petition for declaratory judgment and dismissing the petition with prejudice. Consequently, Appellees' Answer to Appeal is denied as moot.

**AFFIRMED; ANSWER TO APPEAL DENIED AS MOOT**